MARY E. SACIA, Appellant, *against* JOHN J. DECKER *et al.*, Respondents.

(Decided April 4th, 1881.)

The provision of section 832 of the Code of Civil Procedure, making persons convicted of a crime or misdemeanor competent witnesses, applies to such a person after as well as before sentence has been pronounced.

Such a witness may properly be allowed to explain the circumstances of the case in which he was convicted.

In an action for an alleged conversion of personal property by taking it from the plaintiff by means of a writ of replevin, the defense was that the property had been obtained from the defendants,—the plaintiffs in the replevin suit,—by a conspiracy to which the plaintiff was a party, in pursuance of which the defendants were induced by false representations to deliver the property to B., one of the conspirators. It appeared that B. had afterwards transferred the possession of it to another alleged co-conspirator, since deceased, who had presented it as a gift to his son's wife, the plaintiff in this action. *Held,* that B. was a competent witness for the defendants, to testify to transactions between himself and the deceased, being the facts on which the claim of fraud was founded.

An objection to the competency of a witness by reason of interest, if not taken at the trial, cannot be considered on appeal.

Where property has been fraudulently obtained by means of a pretended purchase, the recovery of a judgment for the price by the defrauded vendors while ignorant of the fraud, is not an affirmance of the sale, and does not bar their right to disaffirm and recover the property upon discovery of the fraud.

APPEAL from a judgment of the general term of the Marine Court of the City of New York, affirming a judgment of that court entered upon the verdict of a jury.

The action was brought to recover damages for the alleged unlawful taking of a piano-forte, in February, 1875. The defense was that the piano was obtained in August, 1873, from defendants, by fraud and conspiracy on the part of John L. Bough, Charles Sacia and Henry T. Bassford, to which plaintiff and her husband were parties.

The piano was sold by defendants to Bough, in August,

Sacia *v.* Decker.

1873, he giving his note at four months for the price. The note was not paid, and defendants recovered judgment thereon against Bough, January 30th, 1874.

In February, 1875, defendants took the piano from plaintiff's possession in replevin proceedings against her husband's father, Charles Sacia, they claiming then to have discovered that the piano had been obtained originally from them in pursuance of fraud and conspiracy. For such taking, plaintiff (to whom the piano had been conveyed by her father-in-law, who got it by sale from Bough), brought this action. Defendants recovered a verdict, upon which judgment was entered in their favor. From the judgment the plaintiff appealed to the general term of the Marine Court, which affirmed the judgment; and from this decision the plaintiff appealed to this court.

Upon the appeal the plaintiff claimed that the judgment against her should be reversed, because : I. The alleged fraud and conspiracy were not proved; II. Because the recovery by defendants of the judgment on the note of Bough for the price was an election to affirm the sale to the latter, and a bar to any right to the return of the piano; and III. That the testimony of Bough, the only witness to prove the alleged fraud and conspiracy, was inadmissible. Several exceptions were taken by plaintiff in the course of the trial, which she claimed required a reversal.

*Chatfield & Ransom,* for appellant.

*John D. Townsend* and *W. D. Ladd, Jr.,* for respondents.

J. F. DALY, J.—[After stating the facts as above.]—There was sufficient evidence of fraud and conspiracy to warrant the finding of the jury. Bough testified that the Commercial Hotel (159 Greene street, Jersey City), being in the market for sale, Marcus Sacia came to him, asked him to buy it, and said " it would be a good place to buy goods on credit;" Marcus Sacia was to furnish him notes made by parties named Nash and Pearsall. He tried to buy a billiard table from Collender & Co., but they refused to take the notes. He then

arranged with Sacia as to getting the piano in question. It was necessary to have references. Charles Sacia was asked by his son, Marcus, to stand as reference; II. T. Bassford was asked to do the same. Bough went to defendants, who were piano manufacturers, ordered a piano, and gave Charles Sacia and Bassford as references. Before going, Bough and Marcus Sacia discussed, in the presence of Charles Sacia, what interest they were to have in this matter, and one-quarter interest in any goods he should purchase was spoken of. Marcus Sacia spoke also of the Deckers, telling Bough they were very easy men to work upon. When Charles Decker called on Charles Sacia to inquire about Bough's responsibility, Sacia told him the latter was responsible, and that he was trying to raise money on Bough's property in Hoboken. The fact was that Bough was worth nothing, and had to borrow $350 to take the proposed hotel. In November or December, 1873, Charles Sacia came to the Deckers' place of business, and said he wanted to sell them a mortgage which Bough had turned over to him, and to have the price of the piano deducted from the amount to be paid for the mortgage. At about this time, Sacia was in possession of the piano, it having been transferred to him by Bough without consideration, as Bough swears. In July, 1874, Sacia transferred to the plaintiff, who was the wife of his son, Marcus T., the piano, without consideration. In October, 1873, a letter signed "Frederick Sharp," the writer of which was unknown, was sent to defendants, warning them that Bough was going to cheat them out of the piano; that he had sold it to a party who intended to call for it on the 16th, the date of the letter. The defendants took the letter to Bough, who showed it to Charles Sacia. The transfer from Bough to Charles Sacia took place two or three weeks after that.

This evidence, if true, showed that Charles Sacia was privy to the scheme of his son and Bough to take the hotel in Jersey City, get goods on credit by a false reference to Charles Sacia, Marcus T. Sacia to have a quarter interest in the goods thus obtained; and that Charles Sacia, knowing the fraud by which the piano was obtained, afterwards got it from Bough,

knowing it had not been paid for, and made a present of it to his daughter-in-law.

The only evidence to contradict this was that given by Edward Kelly, formerly bar-tender for Bough, who swore that he saw Charles Sacia pay Bough $650 for the piano—$200 in September, and $450 in the middle of October, 1873. Charles Sacia was dead at the time of the trial, and Marcus T. Sacia was in the Trenton state prison. The plaintiff showed that Bough had been twice convicted and sentenced, once for forgery, and once for attempt to commit burglary in the third degree, on his own plea. He was pardoned for the latter offense, and by a record produced on this appeal, it appears he obtained a reversal of the former conviction for forgery and was granted a new trial.

The jury had the right to weigh the testimony before them and to give credit to such statements as they believed to be true. Their finding shows that they were satisfied there had been fraud committed on defendants, and that Sacia was a party to it. The evidence supports the finding.

Defendant's exceptions are next to be considered.

The witness Bough was not disqualified as a witness, although under sentence for a felony. By the Code (§ 832), persons convicted of a crime are, notwithstanding, competent witnesses. In legal parlance, conviction denotes the final judgment of the court in passing sentence. It cannot have been intended by the legislature that a person convicted by the verdict of a jury, of a felony, should be a competent witness, but after sentence has been pronounced he should not be. The legislature must have intended that the legal meaning of the term convicted should be understood (*Schiffer* v. *Pruden,* 64 N. Y. 52; *Blaufus* v. *People,* 69 N. Y. 107). It was shown, besides, by the record produced on this appeal, that Bough's conviction had been reversed and a new trial granted him, before he was offered as a witness in this action.

When the witness Bough was questioned as to his transactions with Charles Sacia, deceased, his evidence was objected to on the ground that he could not give evidence of transac-

tions between himself and deceased, through whom the plaintiff obtained title to the piano, and to whom Bough had conveyed it; as a party who conveys title cannot impeach it. This rule might apply if the suit were brought by or against Bough, or if these defendants derived their title from Bough. But defendants were impeaching the title Bough attempted to get from them by fraud, and the title which plaintiff and Charles Sacia attempted to establish through the same fraudulent transaction. Any party to the transaction was competent as a witness on behalf of the defrauded vendor, to testify to the facts on which the claim of fraud was founded.

Another objection to his evidence is taken for the first time on appeal, viz. : that he is interested in the event of this action, because if defendants recover their property, the contract of sale to him is rescinded and he is discharged (Code, § 829). Without going into the question as to what relief Bough now has against the judgment defendants hold against him for the price, it is enough to say that this particular objection should have been taken at the trial, for it was one that might have been obviated. Defendants might have shown a release to Bough, or otherwise disposed of the objection to his interest. Where an objection that might have been obviated was not taken at the trial, it cannot be raised on appeal (*Height* v. *People*, 50 N. Y. 392).

Bough was allowed to explain the circumstances of the case in which he was tried and convicted of burglary. This was not error. As the conviction did not disqualify him, but went to his credibility, it is admitted as a proof of his guilt, and must be considered *prima facie* evidence, which may be rebutted. The conviction now stands, I apprehend, on the same footing as a foreign conviction stood, before the adoption of the new Code. Such foreign judgments did not disqualify the witness, but might be offered as *prima facie* evidence of the crime (*Sims* v. *Sims*, 75 N. Y. 466). It is doubtful, however, if plaintiff's exception is sufficient to reach the testimony given, as a new question, unobjected to, was put after the exception and before the testimony was given.

Sacia v. Decker.

The judgment obtained by defendants against Bough for the price of the piano was not a bar to their right of disaffirmance and of recovery of the chattel. The judgment was obtained before they had knowledge of the fraud practiced upon them (3 Wait's Actions and Defenses, 470, 475; Kerr on Fraud and Mistake, 297). The position of plaintiff or of Charles Sacia, to whom Bough transferred the piano, was not altered in the least, and the objection is purely technical. There was no election of remedies, for until defendants knew of the fraud, they could not know they had a choice. Proceeding to sue and recover judgment against Bough for the price, while ignorant that they had a right to reclaim the property, was no more an affirmance of the sale than retaining his note would have been.

It was contended by plaintiff that the receipt by defendants of the " Frederick Sharp " letter of October 16th, 1873, warning them of the attempted fraud, was notice to them, and that their subsequent suit for the price was ratification with knowledge. Defendants proved that they took that letter to Bough. Plaintiff objected to what Bough said to the Mr. Decker who took the letter over to show him. The jury were left to assume what they pleased from this exclusion of testimony, even to inferring that, as defendants took no steps against Bough, he being then in possession of the piano, and his note not having matured, they were re-assured by him, and that any suspicions aroused by the letter were lulled. But the trial judge did all the evidence could possibly require; he left to the jury the question whether, in view of the receipt of the Sharp letter, the suit on the note, and the circumstances, the defendants made their election; charging the jury that if the defendants received information that they were defrauded, they were bound to make the election. He also charged that if the defendants acted negligently at the time of sale, or on the receipt of the Sharp letter, they were guilty of laches, and could not obtain the property as against an innocent purchaser. Upon this charge, so very favorable to plaintiff, the jury found for defendant.

The judgment should be affirmed, with costs.

CHARLES P. DALY, Ch. J., and VAN HOESEN, J., concurred.

Judgment affirmed, with costs.